Argued and submitted September 29, 1989, reversed and remanded for new trial January 17, reconsideration denied April 18, petition for review pending 1990

## STATE OF OREGON,
*Respondent,*

*v.*

## THOMAS REUBEN MARTIN,
*Appellant.*

(C88-02-30931; CA A49620)

785 P2d 801

Peter Gartlan, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Timothy Sylwester, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Jonathan H. Fussner, Assistant Attorney General, Salem.

Before Graber, Presiding Judge, and Riggs and Edmonds Judges.

PER CURIAM

Riggs, J., dissenting.

**PER CURIAM**

Defendant appeals from his convictions for driving under the influence of intoxicants, delivery of methamphetamine, and possession of methamphetamine. ORS 813.010; ORS 475.992. He assigns as error the denial of his motion to suppress.

Officer Lish saw defendant slumped over the steering wheel of a car in a store parking lot. The car's engine was running. She went over "to make sure [that defendant was] all right." "I didn't know if he was sick or asleep or what." When her tapping on the window received no response, she opened the car door and shook defendant's shoulder. She smelled alcohol and observed other signs of intoxication and arrested defendant for DUII. A search incident to that arrest led to the discovery of the methamphetamine that is the basis for the other convictions.[1] The trial court found that the officer was "inquir[ing] into the well-being of the defendant," and the evidence supports that characterization. Where, as here, the officer's sole aim is to render emergency assistance, "incriminating evidence arising from the intrusion by law enforcement officers must be suppressed." *State v. Bridewell,* 306 Or 231, 240, 759 P2d 1054 (1988).[2] The trial court erred in not suppressing all of the evidence.

Reversed and remanded for a new trial.

**RIGGS, J.,** dissenting.

The majority, citing *State v. Bridewell,* 306 Or 231, 759 P2d 1054 (1988), sets an expansive course for which *Bridewell* provides no chart. I do not believe that the language in *Bridewell* was intended to include the *kind* of community caretaking involved in this case. I would change course.

In *Bridewell,* the officer's sole motive in entering the

---

[1] The state argues that defendant consented to the search. However, the consent followed an improper arrest and was not voluntary in the light of all the circumstances. *See State v. Williamson,* 307 Or 621, 772 P2d 404 (1989).

[2] The record does not support the position of the state and of the dissent that, when Lish opened the door, she was acting in a criminal investigatory role and making a "stop, based on reasonable suspicion." 100 Or App at 258.

defendant's property after the expression of community concern about his well-being was to determine whether the defendant had been injured, incapacitated or, possibly, was the victim of foul play at his remote, rural home. The Supreme Court held that drugs found during the search incidental to that community caretaking effort must be suppressed.

In this case, the police officer saw an apparently empty car in a convenience store parking lot, facing toward the street with the engine running. On closer inspection, the officer observed defendant slumped over the steering wheel, apparently asleep or unconscious. She tapped on the window and, when defendant failed to respond, opened the door and shook him. Defendant awoke extremely disoriented and smelling strongly of alcohol. He was arrested for DUII and a warrantless search ensued, during which the officer discovered methamphetamine.

The officer's initial contact with defendant was a proper stop based on reasonable suspicion, and the officer's subsequent actions also constituted a kind of community caretaking function that *Bridewell* should not be read to cover. Although the officer testified that her initial reason for tapping on the window and investigating further was to "make sure [that defendant was] all right," the further investigation was clearly and legitimately broader. Unlike in *Bridewell*, where the sole issue that prompted the officer's contact was defendant's own well-being, the officer's investigation here also served a larger, legitimate public safety purpose. A car in a public parking lot with the motor running, facing toward the street and occupied by a figure slumped over the wheel presents a level of potential danger to the public and the driver that did and, I hope, always would prompt alert police officers to perform the kind of investigation done in this case. I believe that our communities expect that this kind of "caretaking" by the police is within the legitimate public protection functions of law enforcement officials and that contraband discovered during such endeavors should not be suppressed for the reasons cited by the majority. *Bridewell* does not and should not speak to this kind of "caretaking" and, therefore, should not control here. The trial court correctly denied defendant's motion to suppress.

I dissent.