Argued and submitted January 13, decision of Court of Appeals affirmed on different grounds; order of district court reversed and case remanded to district court for further proceedings December 31, 1992

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## RODNEY LYNN RHODES,
*Petitioner on Review.*

## (DC 9001-0112C; CA A65539; SC S38108)

843 P2d 927

James L. McGehee, Stayton, argued the cause and filed the petition for petitioner. With him on the petition were Sharman R. Meiners, and McGehee & Meiners, Stayton.

Ann Kelley, Assistant Attorney General, Salem, argued the cause and filed the response for respondent. With her on the response were Dave B. Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GILLETTE, J.

## GILLETTE, J.

In this criminal case, defendant was charged with the crime of driving while under the influence of intoxicants (DUII), ORS 813.010, after a police officer discovered him slumped over in the seat of his pickup, which was parked along a city street with its engine running. The driver's door was slightly open and the interior dome light was on. The officer opened the door further, discovering a beer can and the odor of alcohol. Prior to his DUII trial, defendant moved the district court to suppress all evidence obtained from his person and his vehicle on the ground that the officer was attempting to perform a community caretaking function, that the officer had no authority to perform such a function and that, in the absence of any such authority, precedent from this court and from the Court of Appeals required that all evidence discovered by the officer after he opened the door be suppressed. The trial court suppressed all the evidence. On the state's appeal, the Court of Appeals reversed. *State v. Rhodes*, 106 Or App 312, 314, 807 P2d 322 (1991). We affirm the decision of the Court of Appeals, but on different grounds.

The historical facts are not in dispute. Officer Hughes testified that on Sunday, January 21, 1990, he saw a pickup truck parked on a public street at 1:55 a.m. The pickup's dome light was on. Hughes drove his patrol car to a point beside the pickup. He saw defendant in the driver's seat, slumped over to the passenger's side. The pickup's engine was running. The driver's door was open three to four inches. Hughes then backed up his patrol car and parked it behind the pickup.

Hughes got out of his patrol car and walked up to the driver's door. Looking through the window of the driver's door, Hughes saw that defendant was breathing. He then fully opened the door and, as the door was opening, smelled the odor of alcohol and saw a beer can on the floor at defendant's left foot. Hughes testified that he did not attempt to get defendant to respond before opening the door.

After opening the door completely, Hughes reached into the pickup and retrieved the beer can. He then reached back in, turned off the engine, and pulled out the keys. Hughes stated that he turned the engine off because, in his

experience, when an intoxicated person is awakened, the person may be startled and put the car into gear. After pulling out the keys, Hughes awakened defendant by shaking him. Hughes asked defendant if he.was okay. Defendant responded that he was all right. Hughes noted that defendant had slurred speech and watery eyes and that his breath smelled of alcohol. Hughes asked defendant to step out of the pickup. Hughes noticed that defendant walked in a wobbly fashion as he followed Hughes to the back of the pickup.

Hughes had a dual purpose in contacting defendant. He testified that, when he first approached defendant's pickup, he was suspicious that the driver might be under the influence of intoxicants because of the way the pickup was parked "curiously," although legally, the dome light was on, defendant was slumped over, and it was late (1:55 a.m. Sunday morning). On cross-examination, Hughes also admitted to testifying at an earlier administrative hearing that his intention when he first contacted defendant was to see if defendant was all right. He had stated at that earlier hearing that at no time before his contact with defendant did he observe any traffic infraction or other violation of law.

After taking the matter under advisement, the trial court issued a letter ruling that the evidence obtained as the result of Hughes' encounter with defendant would be suppressed. The letter stated:

"The facts are almost identical to those in *State v. Martin*, 100 Or App 256[, 785 P2d 801] (1990). There are some small differences of note. One is that the officer in the instant case did not knock on the window of the vehicle to try to arouse the defendant prior to entry into the interior of the vehicle. Another was the testimony of the officer at the hearing that he was 'suspicious' about the slumped-over driver. This is so, in spite of the fact that at a DMV hearing he had testified that his prime motivation was that of seeing whether the defendant was alright. Preponderance of the evidence indicates that that [*i.e.*, assuring the driver was all right] was the prime motivation of the officer. Given that finding, all evidence must be suppressed."[1]

---

[1] In *State v. Martin*, 100 Or App 256, 785 P2d 801 (1990), the case on which the trial court relied and one in which the facts were very similar to those in the present case, the Court of Appeals held that, where "the officer's sole aim is to render emergency assistance, 'incriminating evidence arising from the intrusion by law

The state appealed the trial court's suppression order. The Court of Appeals reversed, rejecting the trial court's reliance on *State v. Martin, supra*, and *State v. Bridewell*, 306 Or 231, 759 P2d 1054 (1988), because, as the lead opinion explained,[2] "[t]he trial court found that Hughes' prime motivation was to render assistance. It did not find, however, that that was his *sole* motive. On the contrary, it also found that he was 'suspicious' about defendant." *State v. Rhodes, supra*, 106 Or App at 315 (emphasis supplied). Having thus distinguished *Martin* and *Bridewell*, the lead opinion then implicitly held that, when Hughes fully opened the driver's door of defendant's vehicle, Hughes performed a "search" under Article I, section 9, of the Oregon Constitution.[3] That search, according to the lead opinion, nonetheless was "reasonable" under Article I, section 9, because the search came within the "police safety" exception to the warrant requirement, as set forth in *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). "Hughes' minimally intrusive act was a reasonable safety precaution under the circumstances." *State v. Rhodes, supra*, 106 Or App at 315-16 (Warren, P. J.).

Riggs, J., specially concurred. He believed that this case should be resolved on the same grounds as articulated in his dissent in *State v. Martin, supra*. In that dissent, he had argued that *State v. Bridewell, supra*, does not apply when police open the car door of a vehicle containing an unconscious or sleeping person, because police are performing a legitimate kind of community caretaking function that *State v. Bridewell, supra*, was never intended to limit.

Edmonds, J., also specially concurred. He believed that *State v. Bridewell, supra*, controlled this case, unless

---

enforcement officers must be suppressed.' " *Id.* at 257 (quoting *State v. Bridewell*, 306 Or 231, 240, 759 P2d 1054 (1988)).

[2] The Court of Appeals panel, although agreed as to the result, could not agree on a single rationale. Each judge stated his views separately.

[3] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, of affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

Hughes had a reasonable suspicion that defendant had committed a crime or unless Hughes' conduct was not a "search" under Article I, section 9. He concluded that Hughes did not have reasonable suspicion, but he also concluded that there was no "search" here, because there was no intrusion into defendant's privacy when Hughes fully opened the already partially open driver's door. Therefore, Hughes was in a place where he had a lawful right to be when he observed in plain view evidence that gave him probable cause to arrest defendant for driving under the influence of intoxicants. 106 Or App at 316-18.

Defendant argues that Hughes' conduct in further opening his pickup door (beyond the three or four inches it already was open) was a "search" under Article I, section 9, of the Oregon Constitution, and that all evidence obtained from that search must be suppressed under this court's holding in *State v. Bridewell, supra.* The state responds that Hughes' actions in fully opening the driver's door and seizing the beer can and ignition keys were not significant intrusions into a protected privacy area of the defendant. Because there was no significant "intrusion," the state argues, *State v. Bridewell* is not applicable to this case. The state argues that the case is instead controlled by *State v. Holmes*, 311 Or 400, 813 P2d 28 (1991), because the contact between Hughes and defendant was nothing more than an "encounter"; it was not a stop, a search, or a "seizure" within the meaning of Article I, section 9.

Under Article I, section 9, a "search" is an intrusion by a governmental officer, agent, or employee into the protected privacy interest of an individual. *See, e.g., State v. Dixon/Digby*, 307 Or 195, 766 P2d 1015 (1988) (police entry into privately owned fields was a search); *State v. Campbell*, 306 Or 157, 170, 759 P2d 1040 (1988) ("certain kinds of government scrutiny" constitute a search); *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986) ("A 'search' occurs when a person's privacy interests are invaded"). Hughes' act of opening the door of defendant's pickup from three or four inches (at which point the inside of the vehicle could not be seen or smelled) to completely open, thus exposing the contents of the inside of the vehicle, and looking inside was a

"search" under Article I, section 9: (1) It is clear that defendant had a protected privacy interest in his vehicle. *See State v. Kosta*, 304 Or 549, 554-55, 748 P2d 72 (1987) (opening of car's trunk was a "search"); *State v. Kock*, 302 Or 29, 725 P2d 1285 (1986) (opening of car door, reaching in and seizing package to identify it, was a "search"); *State v. Brown*, 301 Or 268, 721 P2d 1357 (1986) (entry into car's passenger compartment, glove box, and truck was a "search"). (2) Hughes' actions constituted an "intrusion." Hughes physically grasped the vehicle's door and moved it, exposing the inside of the passenger compartment to a visual inspection of a scope and intensity that, so far as this record shows, could not have been made without opening the door. In other words, Hughes' action permitted him to observe or smell what he otherwise could not have seen or smelled from a lawful vantage point. That was a search. *Cf. State v. Ainsworth*, 310 Or 613, 621, 801 Or 749 (1990) ("a police officer's *unaided* observation, purposive or not, from a lawful vantage point is not a search under Article I, section 9, of the Oregon Constitution") (emphasis supplied). It is Hughes' conduct of physically adjusting the degree to which the pickup protected defendant's privacy that distinguishes this case from others in which we have found no "intrusion" under Article I, section 9. *See, e.g., State v. Gohring*, 311 Or 33, 38-39, 803 P2d 1189 (1991) (unaided observation of property from a helicopter at a lawful altitude was not an "intrusion"); *State v. Ainsworth, supra*, (same); *State v. Slowikowski*, 307 Or 19, 27, 761 P2d 1315 (1988) (sniffing odor of marijuana from a common area outside of private locker was not an "intrusion" into that locker); *State v. Jackson*, 296 Or 430, 438, 677 P2d 21 (1984) (walking around vehicle and looking through the windows of that vehicle to observe what plainly could be seen is not an "intrusion"); *State v. Louis*, 296 Or 57, 60-61, 672 P2d 708 (1983) (use of a 135 mm lens to photograph defendant across the street was not an "intrusion," when lens did not shed light into darkness and provided only modest enlargement, not more than three times normal vision). (3) Hughes was a governmental agent.

█ Because we hold that Hughes' action in fully opening the vehicle's door was a "search" under Article I, section 9, the next question is: Must evidence of a crime, found during that search, be suppressed? Defendant argues that the

evidence must be suppressed under the rule of *State v. Bridewell, supra*. We turn to that issue.

In *State v. Bridewell, supra*, a friend of the defendant became concerned when the defendant failed to return the friend's telephone calls for three or four days. The friend was concerned, because "she knew defendant worked as a logger on his premises, lived alone, and might have suffered an injury. She also knew that defendant suffered from headaches and that threats had been made upon his life." *State v. Bridewell, supra*, 306 Or at 233. On the evening of June 16, she drove to the defendant's premises between 8:00 and 9:00 p.m. She was unable to locate the defendant but observed that the defendant's two pickup trucks were gone and that the defendant's "house was in a disheveled state." *Id.* She reported the situation to the sheriff's department shortly before 10:00 p.m.

Two deputy sheriffs visited the defendant's residence the following morning. They searched the defendant's house, but failed to locate him. Next, they proceeded to the defendant's workshop. They entered the shop and observed marijuana plants. They then

> "called for defendant, who emerged from the room in which the plants were seen. He shut the door behind him. The deputies asked defendant to open the door, but defendant replied that they needed a warrant. When the deputies responded that they did not need a warrant because they already had observed the evidence, defendant assented and opened the door. Three hundred fifty-four marijuana plants were seized."

*Id.* at 234. This court held that the evidence must be suppressed, because the deputies lacked statutory authority for the search. This court stated that "[t]here is no generic 'community caretaking function.' Whether law enforcement officers have specific functions is a matter of statutory law." *Id.* at 239.

In the present case, it was the perceived absence of any statute, rule, or regulation authorizing peace officers to open or enter defendant's pickup that led the trial court to rule that the search was illegal and that, pursuant to *State v. Martin, supra*, and *State v. Bridewell, supra*, any evidence derived from that entry had to be suppressed. Contrary to the

trial court's belief, however, Hughes *had* affirmative authority to take the actions that he took in this case.

The evidence at the suppression hearing established that the officer had a dual purpose in opening the pickup door. The officer was concerned about the defendant's health; he also suspected that the defendant might have been driving under the influence of intoxicants. ORS 131.615 provides:

"(1)   A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry.

"(2)   The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3)   The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

For the purpose of ORS 131.615, "reasonably suspects" means that a peace officer "holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts." ORS 131.605(4). An officer has the same kind of authority with respect to traffic infractions. ORS 810.410.[4] Under the foregoing statutes, the officer had authority to do what he did in this case.

No one questions the right of the officer, when he came upon defendant's pickup, to stop and walk over to the pickup. *Cf. State v. Anfield*, 313 Or 554, 563, 836 P2d 1337 (1992) ("police officers do not need authorization * * * to stop at the scene of a motor vehicle accident on a public highway or in a public place") (Unis, J., concurring). Indeed, the facts as the officer perceived them at the time he stopped — car legally but oddly parked along a street late at night, the engine

_____

[4] ORS 810.410 provides, in part:

"(2)   A police officer may issue a citation to a person for a traffic infraction * * * when the traffic infraction is committed in the police officer's presence * * *.

"(3)   A police officer:

"* * * * *

"(b)   May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

running, interior lights on, and driver slumped over — were sufficient to give the officer a reasonable suspicion that defendant had committed the crime of driving under the influence of intoxicants. The officer thus had a right to "stop" the defendant to investigate. *See State v. Lichty*, 313 Or 579, 584, 835 P2d 904 (1992) (discussing standard for reasonable suspicion to make a stop).

Because defendant was slumped over in the seat of the pickup, apparently somnolent (or worse), and because of the officer's reasonable and articulated fear of a sudden and dangerous reaction by defendant if he were roused by a knock on the window, the officer's choice in opening the door in order to get defendant's attention was a reasonable one. Because the officer acted under specific statutory authority and on the basis of reasonable suspicion, there was no violation of the rule of *State v. Bridewell, supra.*

Because Hughes lawfully opened defendant's vehicle door based upon reasonable suspicion that a crime had been committed, Hughes was in a place where he had a right to be, evidence of criminal activity was in plain view, and what followed was constitutionally permissible — the beer can properly was seized and the other incriminating observations concerning defendant's condition properly were made. *See State v. Keller*, 265 Or 622, 510 P2d 568 (1973) (police lawfully seized drug paraphernalia that was in plain view in an open cosmetic case during a search of the vehicle pursuant to an exception to the warrant requirement).

The decision of the Court of Appeals is affirmed, but on different grounds. The order of the district court is reversed. The case is remanded to the district court for further proceedings.