Argued and submitted June 29, 1992; resubmitted In Banc October 14, 1992, affirmed March 17, reconsideration denied June 16, petition for review denied July 27, 1993 (317 Or 272)

STATE OF OREGON,
*Respondent,*

*v.*

FRANK LEWIS RUSSELL,
*Appellant.*

(C 88-04-31904; CA A60717)

848 P2d 657

Ingrid A. MacFarlane, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender, Salem.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

EDMONDS, J.

Warren, J., dissenting.

## EDMONDS, J.

Defendant appeals his convictions for manufacturing and delivery of a controlled substance. ORS 475.992(1). He contends that the trial court erred by denying his motion to suppress evidence that was seized by the police after they made a warrantless entry into his home. We affirm.

The trial court's findings of historical fact are binding on us, if supported by the evidence in the record, although the legal conclusions drawn from those facts are not. If the trial court does not make findings on all factual questions at issue and there is evidence from which the facts could be decided more than one way, then we presume that the facts were decided in a manner consistent with the trial court's ultimate conclusions. *State v. Warner*, 284 Or 147, 156-58, 585 P2d 681 (1978).

The evidence shows that at 6:30 a.m. on the morning in question, defendant called his mother and told her that "the children needed a babysitter" because he was going to work and their mother [defendant's sister] had not arrived home yet. About 30 minutes later, defendant's mother, Mrs. Russell, went to the house to care for the children but the house was locked and she could not get in. The children, ages approximately 5, 7 and 8, were in the house. The oldest child told Mrs. Russell that their mother was there but "they couldn't wake her." Mrs. Russell left and returned to the house at 9:30 a.m. She knocked on the door and shouted but could not get her daughter to wake up. When the children were unable to let her in the house, Mrs. Russell called "9-1-1" for assistance.

Officer McDermott and an ambulance crew responded. Mrs. Russell told the officer that her daughter was either asleep or unconscious on the sofa inside the house and that she was "unable to arouse her to come to the door;" that her daughter's inability to answer the door might be because of a drug overdose; that three small children were inside the house with her daughter; that one of the children had tried to wake her but could not; that she had "knocked on the door and shouted;" that the doors to the house were locked with dead bolts which required a key, and that she had tried on two

occasions that morning to awake her daughter. She expressed concern about the welfare of her daughter and the children.

From outside the house, McDermott could see the daughter lying on the sofa inside the house. He tried to arouse her by making noise but could not awaken her nor was he able to get the children to open the doors. His attempts to enter through the front and back doors, and the windows failed. After about 10 minutes of attempting to get in the house, he forced entry through a basement window. Before he "even got in," he observed potted marijuana plants beneath the window. Once inside the house, he went upstairs and let the ambulance crew in through the front door. They were successful in awakening the daughter by shouting at her and shaking her. As it turned out, the daughter was not ill nor was she suffering from a drug overdose and the children were also in satisfactory condition. As a result of the officer's observations when he entered the house and the subsequent seizure of the marijuana plants, defendant was convicted.

The trial court found:

"[T]he police officer's conduct in breaking into that home was clearly proper because he indeed faced an emergency, which I would hope that every police officer throughout this state would follow through on in breaking in a window when you can't get in, and I'm satisfied that the officer took all the appropriate measures in trying to enter the house to find out what was wrong with the mother, when he could clearly see little kids who needed attention."

The state contends, and the trial court agreed, that the evidence is admissible under the "Emergency Aid Doctrine," because the officer reasonably believed that he was faced with a true emergency. The assessment of whether a true emergency existed must be made in the light of the circumstances as they were at the time that the warrantless entry was made. *See State v. Follett*, 115 Or App 672, 840 P2d 1298 (1992).

In *Follett, supra*, we said:

"We conclude that the Emergency Aid Doctrine provides an exception to the warrant requirement of Article I, section 9, when these conditions are met:

"(1)  The police must have reasonable grounds to believe that there is an emergency and an immediate need for their assistance for the protection of life.

"(2) The emergency must be a true emergency - the officer's good faith belief alone is insufficient.

"(3) The search must not be primarily motivated by an intent to arrest or to seize evidence.

"(4) The officer must reasonably suspect that the area or place to be searched is associated with the emergency and that, by making a warrantless entry, the officer will discover something that will alleviate the emergency." 115 Or App at 680. (Footnote omitted.)

We hold that the circumstances of this case, as found by the trial court, meet the requirements of the Emergency Aid Doctrine. The dissent would hold that, although the officer was entitled to enter defendant's house under the Emergency Aid Doctrine, the state is not entitled to use the evidence that he saw in the house in a criminal prosecution against defendant. It says that the "subsequent use of the information constitutes an unauthorized search or seizure." 118 Or App at 659.

■■■ A "search" under Article I, section 9, is an intrusion by a governmental agent into the protected privacy interest of an individual. *State v. Rhodes*, 315 Or 191, 196, 843 P2d 927 (1992). A police officer's unaided observation of contraband from a lawful vantage point, purposefully or not, is not a search. *See State v. Gohring*, 311 Or 33, 803 P2d 1189 (1991); *State v. Ainsworth*, 310 Or 613, 801 P2d 749 (1990) (unaided observations resulting from an aerial fly-over); *State v. Jackson*, 296 Or 430, 677 P2d 21 (1984) (observation of the contents of an automobile from outside the automobile); *State v. Peterson*, 114 Or App 126, 834 P2d 488, *rev den* 315 Or 272 (1992). We hold that no search occurred because McDermott was in a place in which he had a right to be when he saw the marijuana plants as he entered the window to render emergency aid. A "seizure" occurs when there is a significant interference with a person's possessory or ownership interests in property. *State v. Owens*, 302 Or 196, 207, 729 P2d 524 (1986). Article I, section 9, prohibits only "unreasonable seizures." The subsequent seizure of the plants based on probable cause was authorized under the plain view doctrine. *State v. Peterson, supra*, 114 Or App at 130.

Also, the dissent relies on the dictum in *State v. Bridewell*, 306 Or 231, 759 P2d 1054 (1988), that the evidence obtained from a non-law enforcement intrusion is not admissible in a criminal prosecution. In *State v. Follett, supra*, 115 Or App at 677, we pointed out that the dictum cannot be reconciled with the court's reasoning in *State v. Miller*, 300 Or 203, 709 P2d 225 (1985), *cert den* 475 US 1141 (1986), in which the court held that evidence discovered in the course of an emergency entry into a motel room was admissible in a criminal proceeding. Based on that observation, we rejected the argument that the dissent now makes.

Our holding in *Follett* finds additional support in *State v. Paulson*, 313 Or 346, 833 P2d 1278 (1992), in which the court held that the holding in *Bridewell* did not control the situation in which an occupant of a house purportedly consented to the entry of police officers in response to an emergency call. While in the house attending to the emergency, an officer saw contraband in plain view. The court said that when there is consent to search, a warrantless search is "reasonable" and remanded to the trial court for determination as to whether in fact consent occurred. Implicit in the court's holding is the proposition that if consent to entry occurred, then the subsequent observation of contraband in plain view does not preclude its admissibility into evidence in a criminal trial. Likewise, in this case, the officer's discovery of the marijuana plants and their subsequent seizure do not violate section 9 when his observation was made from a lawful vantage point. The trial court did not err when it denied defendant's motion to suppress.

Affirmed.

**WARREN, J.,** dissenting.

I agree with the majority that, under the circumstances, Officer McDermott reasonably believed that a true emergency existed. Nevertheless, because I do not agree that the evidence that McDermott observed when he entered defendant's home to render emergency aid is admissible in this criminal prosecution, I dissent.

Oregon Supreme Court precedents establish that a search or seizure is invalid, and any evidence derived therefrom must be suppressed, unless the state actor's conduct

was authorized by Article I, section 9, in the sense that that constitutional provision does not prohibit the search or seizure. *Nelson v. Lane County*, 304 Or 97, 101-06, 743 P2d 692 (1987); *State v. Bridewell*, 306 Or 231, 239, 759 P2d 1054 (1988). That authority exists when a search or seizure is conducted pursuant to a valid warrant or when an exception to the warrant requirement applies. In *State v. Follett*, 115 Or App 672, 680, 840 P2d 1298 (1992), we concluded that "the Emergency Aid Doctrine provides an exception to the warrant requirement of Article I, section 9[.]" 115 Or App at 680. However, that should not necessarily mean that the evidence observed by the state actor who invades a privacy interest pursuant to that exception may be used to prosecute the person whose privacy is invaded.

The basis of every decision under section 9 permitting the use of seized evidence is that if the officer has a right to be where the evidence of a crime is discovered, the state can use that evidence in a criminal prosecution. The warrant requirement, and the judicially crafted exceptions to that requirement, serve only to authorize the state actor to invade protected privacy interests in various situations. After we approve the invasion, the evidence is *per se* admissible. However, that consequence does not necessarily, or even logically, follow.

Although section 9 protects against invasions of privacy interests by precluding unauthorized searches or seizures, nothing in the constitution defines what constitutes a search or a seizure. Under our current view, a search or seizure is an event that does or does not occur at a particular point in time based on particular conduct. However, an invasion of privacy is not necessarily a discreet event. A person's privacy can be invaded when another person discovers private information and again when that person discloses the private information to others. That is why, under the civil law, intrusion into a person's seclusion and publication of private facts are distinct invasion of privacy based torts. *Compare McLain v. Boise Cascade Corp.*, 271 Or 549, 533 P2d 343 (1975), *with Flowers v. Bank of America*, 67 Or App 791, 679 P2d 1385, *rev den* 297 Or 601 (1984).

Because an invasion of privacy can escalate, depending on the extent of any subsequent disclosure of the private

information obtained from the initial invasion, our current perspective of what constitutes a search or seizure cannot shield all of the privacy interest that the government may invade or that section 9 was designed to protect. To say that the government may seize information discovered in an entry to save a person's life does not necessarily mean that the government can further invade that, or some other, person's privacy by using the information it obtains from a rescue to prosecute. Instead, the use of the information obtained from an invasion of privacy should be limited to fulfilling the purpose that justified that invasion. If the use of the information does not further the authorized purpose for the invasion, it should not be permitted under section 9, *i.e.*, the subsequent use of information constitutes an unauthorized search or seizure. This rationale is consistent with the court's conclusion in *Bridewell*, that the police may invade a person's privacy in a nonlaw enforcement context to render aid, but the evidence obtained from that intrusion must be suppressed. *See State v. Bridewell, supra*, 306 Or at 240.

Here, the authorized purpose for McDermott's entry into defendant's house was to render aid. That purpose would not be furthered by allowing the state to use the evidence McDermott obtained to convict defendant. Consequently, although the initial entry into defendant's home did not violate section 9, because there was a true emergency, the subsequent use of the evidence obtained from that entry would violate section 9 so it should be suppressed.[1]

I dissent.

Durham, J., joins in this dissent.

---

[1] The state is, however, authorized to confiscate and destroy that evidence. That is what occurs even if a motion to suppress is allowed and the seized evidence is contraband. *See State v. Davis*, 295 Or 227, 666 P2d 802 (1983).