Submitted on remand from the Oregon Supreme Court May 25, reversed in part and remanded for new trial; otherwise affirmed November 17,1993

# STATE OF OREGON,
*Respondent,*

*v.*

# THOMAS REUBEN MARTIN,
*Appellant.*

(C88-02-30931; CA A49620)

863 P2d 1276

Peter Gartlan argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender.

Timothy Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Jonathan H. Fussner, Assistant Attorney General.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

Edmonds, J., concurring in part; dissenting in part.

## WARREN, P. J.

This case is on remand from the Supreme Court for reconsideration in light of *State v. Rhodes*, 315 Or 191, 843 P2d 927 (1992). Defendant was convicted of delivery and possession of a controlled substance, ORS 475.992, and for driving under the influence of intoxicants (DUII), ORS 813.010. In our opinion, 100 Or App 256, 785 P2d 801 (1990), we held that the trial court improperly denied defendant's motion to suppress all evidence obtained as a result of a search. We now affirm defendant's conviction for DUII and reverse his convictions for delivery and possession of a controlled substance.

In this case, the evidence[1] was that the officer noticed a car in a convenience store parking lot with the engine running and the lights on, facing the street. Defendant was slumped over the steering wheel. The officer approached the driver's door, because she was concerned for defendant's safety. She knocked on the window. When defendant did not respond, she opened the car door and reached in and shook him. Defendant awoke with a start and tried to steer the wheel and to shift gears. His breath smelled of alcohol, his eyes were watery and bloodshot and he was incoherent.

The officer concluded that defendant had been drinking and told him that he was under arrest for DUII. She then helped him turn off the ignition and had him get out of the car. After the officer handcuffed defendant, she conducted what she called a "routine search incident to an arrest." While searching defendant, she found a Dristan tin. She shook the tin and concluded that its contents did not sound like tablets. The officer opened the tin and discovered four packets of methamphetamine.

Defendant was then placed in the officer's patrol car and given *Miranda* warnings. Another officer arrived and asked defendant for consent to search his car. Defendant agreed. The arresting officer returned to defendant's car and seized an open paper bag from the front seat. She looked inside it and saw a box that showed a brand name and a

---

[1] We take the facts from the trial court's findings in its colloquy on the motion to suppress and from other undisputed evidence at the suppression hearing.

picture of a type of scales that the officer testified are frequently used to weigh contraband. Sometime between placing defendant in the patrol car and seizing the paper bag, she decided to tow defendant's car. She returned to the patrol car and asked defendant if the bag contained "more drugs." Defendant said that it did and gave the officer permission to search the contents of the paper bag. She discovered scales and additional methamphetamine.

The first issue is whether the initial search, the opening of the car door, was a valid warrantless search. In *State v. Bridewell*, 306 Or 231, 759 P2d 1054 (1988), the Supreme Court held that, in the absence of a statutory authorization for a warrantless search of a person's premises, a search is *per se* unreasonable, unless the search fits into a carefully delineated exception.[2] The court held that, in situations implicating criminal law enforcement functions, officers may enter premises without a warrant to render emergency assistance under the emergency/exigent circumstances exception. Incriminating evidence found during the entry may be used in a criminal prosecution. The court also said in *dictum* that, in circumstances not implicating criminal law enforcement functions, an officer may enter premises without a warrant to render emergency assistance under the "emergency aid doctrine," but incriminating evidence arising from the intrusion must be suppressed. 306 Or at 239-40.

In *State v. Rhodes, supra*, 315 Or at 198-200, the Supreme Court explained and distinguished *Bridewell*. In *Rhodes*, a police officer saw a pickup truck parked on a public street. The engine was running and the interior light was on. The driver was slumped over the wheel. The officer looked through the window of the driver's door and saw that the driver was breathing. The car door was slightly open. The officer fully opened the door, turned off the engine and retrieved a beer can. He testified that, although his primary motive for the search was concern for the welfare of the driver, he also suspected that the driver was under the influence of intoxicants.

---

[2] In 1991, the legislature created statutory authority to legally enter premises without a warrant in order to provide specific community caretaking functions. ORS 133.033. The statute does not apply to the events in this case, which occurred in 1987.

The issue was whether the evidence should have been suppressed under *Bridewell*. The court said that, because the officer reasonably suspected that the driver might have been driving under the influence of intoxicants, ORS 131.615 authorized him to "stop" the defendant to investigate. The court held that, because the officer acted under specific statutory authority and on the basis of reasonable suspicion, there was no violation of the rule in *Bridewell*. 315 Or at 199. The court did not reach the issue of whether evidence obtained *solely* as a result of a search that was initiated out of concern for a defendant's welfare must be suppressed.

In reviewing the lawfulness of a warrantless search, we are bound by the trial court's findings of historical fact that are supported by evidence in the record. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). In this case, the trial court found that the sole purpose for opening the car door was to inquire into the well-being of defendant. The evidence in the record supports that finding. Because a motive related to criminal justice was not implicated in the search, *Rhodes* does not apply.

Since our original decision in this case, we decided *State v. Follett*, 115 Or App 672, 840 P2d 1298 (1992), *rev den* 317 Or 163 (1993), in which we attempted to clarify the *dictum* in *Bridewell* that limited the application of the emergency/exigent circumstances exception to the warrant requirement to criminal law enforcement functions. We said that the application of the doctrine need not be limited to a criminal context, and evidence obtained during a warrantless search motivated by a true emergency may be admissible, even if the officer does not have a criminal investigative motive for the search. 115 Or App at 678-80.

In *Follett*, we introduced a test for determining whether an emergency exception to the warrant requirement applies. The four conditions that must exist before a warrantless entry based on an emergency does not violate Article I, section 9, or the Fourth Amendment are:

> "(1) The police must have reasonable grounds to believe that there is an emergency and an immediate need for their assistance for the protection of life.

"(2)   The emergency must be a true emergency—the officer's good faith alone is insufficient.

"(3)   The search must not be primarily motivated by an intent to arrest or to seize evidence.

"(4)   The officer must reasonably suspect that the area or place to be searched is associated with the emergency and that, by making a warrantless entry, the officer will discover something that will alleviate the emergency." 115 Or App at 680. (Footnote omitted.)

■      Based on the uncontroverted facts of this case, the test is satisfied. The officer found defendant slumped over the wheel of a car that had its lights on and engine running. She had reasonable grounds to believe that there was an emergency and an immediate need for her assistance. Because defendant did not respond when the officer knocked on the window, the only way she could discover the nature of the emergency and take steps to alleviate it was to open the car door. Her motive was concern for defendant's safety.

Finally, this was a true emergency. We assess whether there is true emergency in light of the circumstances as they were at the time the warrantless entry was made. *State v. Russell*, 118 Or App 652, 655, 848 P2d 657, *rev den* 317 Or 272 (1993). Defendant was slumped over the steering wheel in a car that was facing the street in a public parking lot, its lights on and engine running. There was potential danger to defendant and the public. Under these circumstances, the officer faced a true emergency.

We conclude that the officer's initial search when she opened the door of defendant's car meets the requirements of *Follett* for valid warrantless searches under the emergency aid doctrine. It is undisputed that once the officer opened the car door she discovered evidence sufficient to justify defendant's arrest for DUII. Defendant does not argue, and nothing in the record suggests, that defendant's DUII conviction was based on anything other than alcohol intoxication. Accordingly, we affirm defendant's conviction for DUII.

■      Defendant next argues that evidence obtained from the consensual search of the paper bag should be suppressed, because it was involuntary under the totality of the circumstances and was the result of the exploitation of an illegal

search. The state responds that the consent was voluntary and that, even if it was not, the bag was searched during a proper inventory. We did not specifically decide this issue in our original opinion, because we held that the initial search and arrest were invalid.[3]

The trial court suppressed the contents of the Dristan tin, rejecting the state's contention that the search that led to its discovery was a valid search incident to arrest. Defendant argues that the police investigation into the contents of the paper bag was a result of the exploitation of that illegally seized evidence.

■■ A search incident to arrest must be "reasonable in light of all the facts." *State v. Caraher*, 293 Or 741, 759, 653 P2d 942 (1982). The purpose of the search must be to protect the arresting officer, to obtain relevant evidence of the crime prompting the arrest or to prevent destruction of evidence. 293 Or at 758-59; *State v. Baker*, 100 Or App 31, 33, 784 P2d 446 (1989). The state relies on *State v. Smith*, 97 Or App 114, 775 P2d 335, *rev den* 308 Or 315 (1989), to argue that the search was valid because the officer believed that the Dristan tin contained controlled substances, and that it "announced its contents," justifying its seizure and the subsequent search. The state's reliance on *Smith* is misplaced. *Smith* does not address the threshold issue of whether a search incident to arrest is valid. That issue must be decided by applying the criteria articulated in *Caraher*.

■ Applying those criteria, we agree with the trial court that the search resulting in discovery of the methamphetamine in the Dristan tin was invalid. First, the officer did not give any testimony that she was concerned for her safety. Defendant was handcuffed and displayed no signs of violence. Next, the officer testified that she believed that defendant's intoxication was a result of alcohol. She did not suspect that he was under the influence of any other substance. The Dristan tin could not reasonably be expected to contain evidence of the crime prompting the arrest, and taking it from

___
[3] In that opinion, we said that defendant's consent followed an improper arrest and was not voluntary in light of all the circumstances. 100 Or App at 257 n 1. That statement was not necessary to our decision and we are not bound by it. Further, because we have determined that the arrest was proper, we must re-examine the validity of the search of the paper bag.

defendant's person was unrelated to defendant's arrest for DUII. The officer did not testify that she was looking for evidence of alcohol intoxication in the Dristan tin, or that she seized the tin to prevent the destruction of evidence. Because the seizure of the Dristan tin cannot be justified under *Caraher*, the search resulting in discovery of methamphetamine in the Dristan tin was invalid.

We next determine the effect of the illegally seized evidence on defendant's consent to search the paper bag. The trial court found that defendant consented to the search of the paper bag knowingly and voluntarily. Although we are bound by the trial court's findings of historical facts, *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968), we must determine if those facts are sufficient to satisfy constitutional standards. *State v. Warner*, 284 Or 147, 158, 585 P2d 681 (1978). We conclude that there is evidence in the record supporting the trial court's finding that defendant voluntarily consented to the search of the paper bag. However, even assuming that he gave his consent voluntarily, "unlawful police conduct occurring before a consent search may affect the admissibility of evidence seized during that search." *State v. Rodriguez*, 317 Or 27, 38-39, 854 P2d 399 (1992). Whether suppression is required in any case depends on the nature of the connection between the unlawful police conduct and the evidence sought to be suppressed. 317 Or at 39. If the consent to search is voluntary, evidence should be suppressed only where the police have exploited their prior unlawful conduct to obtain that consent. 317 Or at 40. *See also State v. Quinn* 290 Or 383, 394-97, 622 P2d 630 (1981). "Exploitation occurs when the police take advantage of the circumstances of their unlawful conduct to obtain the consent to search." *State v. Rodriguez, supra*, 317 Or at 40.

In *Rodriguez*, an immigration agent, an FBI agent and police officers went to the defendant's apartment with an allegedly defective arrest warrant. The immigration agent asked him if he had any drugs or guns in his apartment. He said no and told the agent that the police could search the apartment. They found guns, and the defendant was later charged with and convicted of being an ex-convict in possession of firearms. He appealed the trial court's denial of his motion to suppress, and we reversed. On appeal, the Supreme

Court reinstated the trial court's decision, saying that nothing in the facts showed that the police traded on, took advantage of or exploited any unlawful conduct to obtain the defendant's consent.

The court said that *State v. Williamson*, 307 Or 621, 772 P2d 404 (1989), provides an example of police exploitation of prior unlawful conduct. In that case, the police stopped a pickup at an illegal road block. They smelled what they believed to be marijuana in the bed of the pickup and asked the defendant for consent to search it. After he refused, they said that they would detain the pickup until they got a warrant. The defendant then consented to the search, and the police discovered marijuana. The court concluded that the police had exploited their unlawful conduct, the road block, to obtain the defendant's consent to search, and suppressed the evidence.

■ Because determining the legality of searches and seizures depends largely on the facts of each case, *State v. Warner, supra*, 284 Or at 149, there is no bright line rule to determine when police exploitation of unlawful conduct occurs. However, here, as in *Williamson*, the police exploited their prior illegal activity to obtain defendant's consent. In this case, the officer had discovered methamphetamine during the illegal search incident to arrest. Defendant was handcuffed, placed in the back of a patrol car and had been asked several questions about the contents of the Dristan tin. The officer then confronted him with the paper bag and asked if it contained *more* drugs. There is a direct connection between asking that question and the fact that the officer had illegally discovered methamphetamine in the earlier search. We conclude that the methamphetamine and scales discovered in the bag must be suppressed, because the police obtained them by trading on evidence that they had only as a result of the illegal search incident to arrest.

■ ■ The state argues that, even if the search of the bag was not a valid consent search, it was the result of a lawful inventory of the car.[4] However, the state must show by a

---

[4] As part of its argument that the methamphetamine in the paper bag was discovered pursuant to a lawful inventory of the car, the state contends that defendant "apparently did not challenge the propriety of the inventory as such in the trial court." It does not explicitly argue that defendant failed to preserve his

preponderance of the evidence that the inventory was conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the officer taking the inventory. *State v. Atkinson*, 298 Or 1, 10, 688 P2d 832 (1984).

Assuming that the bag was searched as part of an inventory, the state failed to meet its burden of proof.[5] The officer testified that:

> "[W]e do a routine search of the vehicle that is going to be towed, and it's our procedure to tow vehicles on a traffic crime, and so I was going to tow the vehicle and do a routine search for the contents."

She also said that the purpose of the inventory search was so that "later on the person doesn't claim that property was taken from the vehicle and to secure any property of great value * * *." The officer agreed that inventory searches were conducted pursuant to some published guideline. There was no other evidence regarding the inventory process. We conclude that the evidence was insufficiently specific to meet the *Atkinson* requirements, and that the state therefore failed to meet its burden of showing, by a preponderance of the evidence, that the paper bag was discovered as part of a proper inventory of the car. *See State v. Gaunce*, 114 Or App 190, 834 P2d 512, *rev den* 315 Or 271 (1992); *State v. Willhite*, 110 Or App 567, 824 P2d 419 (1992). Because there was no valid basis for the warrantless search of the paper bag, the evidence in the bag should have been suppressed.

The state's other arguments do not merit discussion.

---

argument below. However, even assuming that the state made that argument, the trial court had notice that defendant was challenging the validity of the inventory. During closing statements at the hearing on the motion to suppress, defendant's counsel questioned whether the search was justified "on the basis of an inventory search and/or a consent by [defendant]." After a brief exchange between the court and defense counsel, the court ended the discussion by concluding that the search was valid. Under the circumstances, we conclude that defendant preserved his argument.

[5] The state candidly admits that the record supporting the inventory process is incomplete.

Convictions for delivery and possession of a controlled substance reversed and remanded for a new trial; otherwise affirmed.

**EDMONDS, J.,** concurring in part; dissenting in part.

The majority affirms defendant's conviction for DUII because it holds that the officer's initial search when she opened the door of defendant's car meets the requirements of *State v. Follett*, 115 Or App 672, 840 P2d 1298 (1992), *rev den* 317 Or 163 (1993), for a valid search under the emergency aid doctrine. The majority also holds that the search of the Dristan tin in defendant's possession exceeded the scope of a permissible search incident to an arrest for DUII, and that the trial court properly suppressed the evidence that was seized from the tin. I agree with the majority's resolution of those issues. However, the majority also holds that the evidence seized as the result of the search of a paper bag in defendant's car is inadmissible, and it reverses the conviction for possession of a controlled substance. It concludes that the evidence seized from the bag was not the result of a valid consent search or a lawful inventory of the car's contents. I disagree with that holding.

In *State v. Rodriguez*, 317 Or 27, 854 P2d 399 (1993), the court made certain observations that are instructive in this case. It said:

> "The distinction that we make here between voluntariness and exploitation is an important one. Unlawful police conduct occurring before a search made pursuant to a person's consent may affect the admissibility of evidence seized during that search in two ways. In some cases, the unlawful conduct may bear on the issue of voluntariness. That is, the unlawful conduct may have some effect on the state of mind of the person giving the consent, affecting whether the consent is a voluntary act of that person's free will. Where the unlawful conduct bears on the voluntariness of the consent, as in any other case where voluntariness is at issue, the state must prove by a preponderance of the evidence that the consent was voluntary. * * *

> "Where, as here, the question of the voluntariness of the consent has not been raised, or where the court has determined that the consent was voluntary, unlawful police conduct occurring before a consent search still may affect the

admissibility of evidence seized during that search. This is so because that unlawful conduct — either an unreasonable search or an unreasonable seizure — occurring before the consent search was a violation of the defendant's rights, even if the consent search by itself was not. Put differently: There may be cases in which suppression of evidence obtained during a consent search may be necessary to vindicate a defendant's rights that were violated by earlier, unlawful police conduct.

"*Whether suppression is required in any such case will, however, depend on the nature of the connection between the unlawful police conduct and the evidence sought to be suppressed.* As we have noted previously, evidence is subject to suppression in a criminal prosecution if it was '*obtained in violation* of a defendant's rights under [Article I, section 9].' Under that standard, *there will have to be, at the very least, a causal connection between the unlawful police conduct and the evidence uncovered during the subsequent consent search.* Thus, where the evidence would have been obtained even in the absence of the unlawful police conduct — *i.e.,* where there is no causal connection between the unlawful conduct and the discovery of the evidence — the mere fact that the evidence was obtained *after* that conduct will not require suppression.

"*A causal connection alone*, however, *still is not sufficient to require suppression.* This court has rejected the so-called 'but for' test, which would require the suppression of any evidence that would not have been discovered 'but for' the unlawful police conduct. Thus, the fact that, 'but for' the unlawful conduct, the police would not have been in a position to (for example) seek a person's consent does not, in and of itself, render any evidence uncovered during the ensuing consent search inadmissible.

"In what circumstances, then, does unlawful police conduct render evidence obtained in a later consent search inadmissible, where the consent to the search is voluntary? We think that *evidence obtained during such a search should be suppressed only in those cases where the police have exploited their prior unlawful conduct to obtain that consent.* Only where such exploitation occurs can it be said that the evidence discovered subsequently was 'obtained in violation' of a defendant's rights under Article I, section 9.

"Mere physical presence as a result of prior unlawful conduct does not constitute exploitation of that conduct. *Exploitation occurs when the police take advantage of the*

*circumstances of their unlawful conduct to obtain the consent to search.*" 317 Or at 38. (Footnotes and citations omitted; some emphasis in original; some emphasis supplied.)

Under the standard in *Rodriguez*, the sequence of events in this case becomes critical to the analysis. The officer's uncontroverted testimony is that, after the officer had the defendant turn the motor off in his car, she had him get out of the car, and she placed him in handcuffs incident to an arrest for DUII. Pursuant to that arrest, she conducted a search while he was standing outside his car, and before he was placed in the patrol car. It was during this search that the officer discovered and opened the Dristan tin. Thereafter, she placed defendant in the back of the police car and returned to his car to inventory its contents. She testified:

"Q [DISTRICT ATTORNEY] Do you have any orders that tells what you would do?

"A [OFFICER] It's an inventory search so later on the person doesn't claim that property was taken from the vehicle and to secure any property of great value, we wouldn't want it left out.

"Q That's pursuant to a published —

"A Yes, sir.

"Q Describe what occurred when you approached his car after having placed him in the rear of your patrol car and having already found what you believe to be meth in the Dristan tin.

"A His car door was already open. I looked in the front seat and saw a brown paper bag that was open. I looked inside the bag and saw a small box, a little cartoon-type box with the words Carla Brown on it, and a picture of scales.

"My experience in dealing with people who distribute drugs, they often use scales for weighing out the products and bag it. I picked up that bag and took it over to the car at that point. And that's when the conversation of what everything was ensued with Officer Swan and [defendant].

"Q So you were sitting in the front seat and you already testified Officer Swan had the door open on the driver's side. The defendant was in the back. Where was the paper bag?

"A I don't remember whether I still had it or Officer Swan had it. He had it for a while and I had for a while.

"Q Describe what occurred at this point as you were in the front seat and Officer Swan was outside speaking to the defendant.

"A When I took the bag over and asked what it contained and if it contained more drugs, he shrugged and agreed that it did. I found scales, a canister that was not empty. I asked him if it contained more crank and he said yes and he said we could look inside. And it contained two larger baggies than the quarter size ones that we had found with a larger amount of what appeared to be methamphetamines."

Defense counsel argued to the trial court that defendant's consent to the search was not voluntary:

"[Defendant] is in the back seat of a police car, handcuffed, being interrogated by two police officers and because if the court finds there is also an intervening bad police practice such as an illegal search of this tin and he has found drugs at that point [defendant] may have — how can it be voluntary? He has given up basically."

Counsel also said:

"Well, I think the Court should apply a similar analysis to the subsequent seizure of the brown paper bag which contained a box and a film canister also. The police officer attempts to justify that on the basis of an inventory search and/or a consent by [defendant].

"* * * * *

"The inventory is an established exclusion of the rule. Same problem getting into closed containers that are in this brown paper bags. Clearly, no reasonable relationship to the Driving Under the Influence. No obvious connection to drugs which if the Court does suppress the Dristan box, then we start with a clean slate."

The trial court found that the consent was voluntary and denied the motion to suppress.

The first issue is whether defendant's consent was given voluntarily or was the result of express or implied coercion. We are bound by the trial court's findings of voluntariness if the undisputed historical facts are sufficient to satisfy constitutional standards of due process. *State v. Kennedy*, 290 Or 493, 502, 624 P2d 99 (1981). The fact that defendant was under arrest for DUII does not render the consent to search involuntary *per se.* In seeking the consent,

the officers made no threats or promises. In addition to Officer Lish's testimony, there is evidence that Officer Swan also asked defendant if they could search his car and defendant replied "sure." I agree with the trial court that the state has proven that defendant voluntarily gave his consent to search the paper bag.

The next issue is whether the consent was obtained by the police "exploiting" the search and seizure of the Dristan tin's contents. Under *State v. Rodriguez, supra,* we resolve this issue by asking two questions: First, is there a causal connection between the unlawful police conduct and the consent, and second, if so, did the officer exploit her prior unlawful conduct to obtain the consent:

> "[W]here the evidence would have been obtained even in the absence of the unlawful police conduct − *i.e.*, where there is no causal connection between the unlawful conduct and the discovery of the evidence − the mere fact that the evidence was obtained after that conduct will not require suppression." 317 Or at 39.

The record establishes that the officer was going to undertake an inventory of the contents of the vehicle incident to the DUII arrest, whether the Dristan tin had been searched or not. She was proceeding under an administrative policy necessitated by defendant's arrest. When she entered the car to conduct the inventory, the bag was open, and she could see inside it. She picked up the bag and took it to the patrol car, because she could see a box in it that had a picture of scales on it. That act was lawful. She was entitled to seize the bag and inventory it as a paper bag with a box of scales in it.[1] She was

---

[1] The majority is wrong when it says that defendant argued below that the search could not be justified on the basis of an inventory, because the inventory was not conducted in accordance with the requirements of *State v. Atkinson*, 298 Or 1, 10, 688 P2d 832 (1984). Defendant did not make that specific argument to the trial court. As the previously quoted material illustrates, defendant argued to the trial court that the inventory search was improper because it lacked a reasonable nexus to the arrest for DUII. Not only did defendant not make the argument on which the majority relies, but the argument defendant did make to the trial court about the inventory is wrong. The scope of an inventory of an impounded vehicle is not circumscribed by the nature of the arrest. Rather, its scope is governed by the administrative procedures that are adopted to protect against lost or stolen property. The essence of the requirement that error be preserved is a requirement that the objecting party tell the trial court enough so that the court can rule in an informed manner. Defendant did not argue to the trial court that a search of the contents of the bag exceeded the scope of a permissible inventory and we should not decide that unpreserved issue.

also entitled to seek defendant's consent to search it. Because the evidence shows that the consent was a product of the inventory process and was unrelated in time and place to the seizure of the drugs in the Dristan tin, our analysis should be at an end. On that basis, we should hold that the evidence seized from the paper bag is admissible.

Contrary to those facts, the majority holds that there was a causal connection between the unlawful police conduct and the giving of the consent by defendant. Even assuming that fact, the majority again errs when it concludes that the officer exploited her search of the Dristan tin to obtain the consent:

> "Defendant was handcuffed, placed in the back of a patrol car and had been asked several questions about the contents of the Dristan tin. The officer then confronted him with the paper bag and asked if it contained *more* drugs. There is a direct connection between asking that question and the fact that the officer had illegally discovered methamphetamine in the earlier search. We conclude that the methamphetamine and scales discovered in the bag must be suppressed, because the police obtained them by trading on evidence that they had only as a result of the illegal search incident to arrest." 124 Or App at 467. (Emphasis in original.)

Apparently, the majority holds that there was an exploitation of the seizure of the drugs in the Dristan tin, because the officer used the word "more" when she asked defendant whether he had drugs in the bag. The majority misapplies the test articulated in *Rodriguez*, because it fails to recognize that a causal connection alone is not sufficient for suppression. "Exploitation" occurs when the police take advantage of the prior illegality *to obtain the consent*. Even if the mention of "more" drugs establishes a causal connection to the prior illegality, the mention of "more drugs" in passing does not constitute the "taking advantage of" or "trading" on the discovery of the drugs in the Dristan tin contemplated by the holding in *Rodriguez*. Nothing in the constitution prevented the officer from asking about drugs based on what she had seen in the open bag. The reference to "more" was incidental to the inquiry for inventory purposes about what the bag contained. In contrast, an example of exploitation would have been a representation by the officer to the effect: "Because we found drugs in the Dristan tin, you might as well consent to a

search of the paper bag; because if you don't, we are going to get a search warrant." *See State v. Williamson*, 307 Or 621, 772 P2d 404 (1989). Here, no exploitation occurred because of the officer's questions. Nothing in those questions "exploited" the prior illegality within the meaning of *Rodriguez* to compel defendant to consent to the search of the bag. The majority's holding is not supported by the facts nor is it a proper application of the holding in *Rodriguez*.

For these reasons, I dissent.