Argued and submitted June 12, reversed and remanded July 19, petition for review denied December 12, 1995 (322 Or 362)

# STATE OF OREGON,
*Appellant,*

*v.*

# GORDON PAUL LYNCH,
*Respondent.*

(C93-12-38211; CA A84730)

900 P2d 1042

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, Virginia L.

Linder, Solicitor General, and Janet A. Klapstein, Assistant Attorney General.

Cynthia I. Mohiuddin argued the cause for respondent. With her on the brief was Gary M. Carlson and Associates.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

The state appeals from a pretrial order granting defendant's motion to suppress evidence of a marijuana grow operation discovered when the police searched his home during an investigation of a suspected burglary. The issue is whether the officers were justified by probable cause and exigent circumstances in opening and searching behind a make-shift door in one of defendant's closets. We reverse.

During the morning of November 17, 1993, defendant's neighbor saw two men knocking on the front door of another neighbor's house. Around noon, the neighbor saw the same two men in defendant's backyard trying to pry open the kitchen window. He became suspicious and called the police. About two minutes later, several Portland police officers arrived in response to the neighbor's call of a burglary in progress. They talked to the neighbor, who directed them to defendant's house. They checked the perimeter of the house for signs of entry. The officers noticed that the side gate to defendant's yard was open and that the kitchen window pane was cracked, but closed. Officers Dunlap and Cancio then noticed an open window on the side of defendant's house, about seven feet above ground level, with its blinds "just everywhere sticking out and just askew." Believing that burglars were in the house, Dunlap and Cancio used a ladder supplied by defendant's neighbor to climb through the open window and into defendant's office. With guns drawn, the officers did a room-by-room search of the main floor for burglars, eventually coming to a closet. Still believing that burglars might be in the house and that they could be hiding in the closet, the officers opened the door and looked inside. They noticed that one end of the wall had been replaced with a make-shift door.[1] Neither officer could recall if the door was ajar or closed when they first saw it. They believed that burglars could be concealed behind the door. Cancio, and then Dunlap, went through the opening and discovered that it led to a room in which defendant was growing marijuana. Dunlap was worried about concealed booby traps and left the house.

---

[1] Defendant testified that the left wall of the closet was cut out along its edges leaving an opening of about two-and-a-half feet wide by five-and-a-half to six feet tall. He said he covered the opening with a board that laid up against the opening, with a two-inch overhang on each side, and held it in place with tape.

Cancio quickly walked through the second level of the house before he went outside.

Defendant arrived at his house approximately 20 minutes after the officers discovered the marijuana grow operation. He went inside, noticed that someone had tried to break in, and that the door leading to the grow operation was open. Defendant spoke with an officer at the house who advised him that the police were aware of both the burglary and of the marijuana grow operation. The officer requested defendant's consent to complete the search of his house and told defendant that he could secure a warrant if defendant did not consent. Defendant initially said that he would like to speak with an attorney, but later told the officer to complete the search.

Defendant was arrested and indicted for manufacture, delivery and possession of a controlled substance. ORS 475.992. At the pretrial hearing, he moved to suppress the evidence seized in the warrantless search of his house. He contended that there was neither probable cause nor exigent circumstances for the officers to believe that there was a crime occurring in his house or that they would find burglars inside. He further contended that his consent to the search of his house was invalid because it was not voluntarily given and that he was denied his right to contact an attorney.

The trial court ruled that the officers had probable cause to believe that a burglary was in progress at defendant's house and that exigent circumstances justified both their warrantless entry through the office window and their search of the closet. However, it found inconsistencies in the officers' testimony regarding the condition and appearance of the make-shift door in the closet and whether they continued their search of the house after they discovered the marijuana grow operation. It concluded that the door was closed when the officers entered the closet and that "in that condition it was not likely that there would be somebody concealed behind it." It also concluded that no burglary had occurred. It ruled that the officers' subsequent search of the area behind the door was not supported by probable cause and exigent circumstances and that defendant's consent to search his home was valid, but was not independent of the previous illegal search. It therefore suppressed evidence of the marijuana

grow operation and dismissed the indictment against defendant.

■   In order to search a home without a warrant for evidence of a crime, the police must act within one of the established exceptions to the warrant requirement. *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983). The state has the burden to prove by a preponderance of the evidence the validity of a warrantless search. ORS 133.693(4). An exigent circumstance exists if a situation requires the police to act swiftly to forestall the imminent destruction of evidence, escape of a suspect, or injury to persons or property. *State v. Girard*, 276 Or 511, 514, 555 P2d 445 (1976). We are bound by the trial court's findings of historical fact and review to determine whether the trial court applied the correct law to those facts. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991).

■   The state assigns error to the trial court's ruling that the officers did not have probable cause and exigent circumstances to search beyond the make-shift door in the closet and to suppression of the evidence of the marijuana grow operation and dismissal of the indictment. It contends that whether the door was open or closed when the officers discovered it, it was immediately obvious to them that it could lead to a hiding place and that anyone hiding in the closet could have entered into that space. The state maintains that that hiding place was an objectively reasonable place to look for burglars and that the officers' entry into that space was as justified as their initial entry into the house itself. As we understand defendant's response, he contends that because the trial court found that no burglary had occurred, exigent circumstances did not justify the officers' opening the make-shift door and their subsequent search of the area behind it.[2]

We agree with the state. Both Dunlap and Cancio reasonably believed that burglars were present in defendant's

---

[2] Defendant does not cross-assign error to the trial court's ruling that he voluntarily consented to the search of his home and that he was not deprived of the right to counsel.

Defendant also argues that the officer's initial entry into his house and their subsequent search of the closet were not supported by exigent circumstances. That argument conflicts with the trial court's findings of fact. Because defendant did not cross-assign error to those findings, we do not address it.

house and they were concerned for their safety during the course of their search. Dunlap testified that:

"The entire time I was investigating a burglary. When we went into the closet, everything we were looking for was a place where a person could hide. Everything that we opened was * * * something that someone could have walked through."

The officers' search into the area beyond the make-shift door was lawful based on their objectively reasonable belief under the circumstances that they might discover burglars hiding behind it. The officers searched only for burglars and only in those areas that they reasonably believed might conceal them. The scope of the warrantless search was properly limited to the exigency that justified it. *Stevens*, 311 Or at 130. The trial court erred in suppressing evidence of the marijuana grow operation and in dismissing the indictment against defendant.

Reversed and remanded.