Argued and submitted January 29, reversed and remanded April 16, 1997

# STATE OF OREGON,
*Appellant,*

*v.*

# COLLEEN G. De AUBRE,
*Respondent.*

(C95-11-48302; CA A92418)

937 P2d 125

David B. Thompson, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Andy Simrin, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

**DE MUNIZ, J.**

The state appeals a pretrial order suppressing evidence seized from defendant's fanny pack. We reverse and remand.

On November 16, 1995, hospital security personnel at the Portland Adventist Medical Center contacted Officer Harper for assistance. Harper, a uniformed Portland Police Officer, was in the emergency room at the hospital investigating an unrelated motor vehicle accident. The security personnel told Harper that a hospital employee believed that a patient may have overdosed on prescription medication and left the hospital. They asked for Harper's assistance in finding her, and he agreed. A short time later, Harper saw defendant and another woman at a bus stop. He approached the two women and asked whether one had taken "a bunch of medication." Defendant told Harper that she had taken approximately 100 Ativan pills. Harper escorted her back to the hospital, where defendant was placed in an examining room and prepared for a lavage (stomach pump). When that procedure began, Harper left the room.

In the examining room, Bjur, a hospital staff member, asked defendant what the tablet dosage was that she had taken. Bjur testified that she needed to know the dosage to determine the proper course of treatment. Defendant said that she did not know but that she thought the container was in the pocket of her coat, which was in the examining room. Bjur looked through defendant's coat pockets for something that would indicate the dosage level but found nothing. Defendant then said the pill container may be in her backpack or her fanny pack, which were also in the room. Bjur looked through those as well. While Bjur was looking through defendant's pockets, backpack, and fanny pack, defendant was sitting upright on a gurney, unrestrained, talking to Bjur and watching what Bjur was doing. In the fanny pack, Bjur found a loaded gun, which she turned over to Harper. Bjur then consulted with physicians at the hospital, and a decision was made to place defendant on a mental hold.[1]

---

[1] Under ORS 426.232(1),

Defendant was charged with unlawful possession of a firearm. ORS 166.250(1). Before trial, she filed a motion to suppress the evidence derived from the search of her fanny pack. Following an evidentiary hearing, the district court found that, when Bjur searched defendant's personal effects, defendant was involuntarily restrained under a mental commitment hold and that Bjur was acting as a state agent. The court then held that, under *State v. Okeke*, 304 Or 367, 745 P2d 418 (1987), Bjur's search of the fanny pack and seizure of the gun was unlawful and that suppression was required.

■ The state assigns error to the court's order suppressing evidence. It argues that the court read *Okeke* too broadly and that Bjur's search of the fanny pack was lawful under the emergency aid doctrine established in *State v. Follett*, 115 Or App 672, 840 P2d 1298 (1992), *rev den* 317 Or 163 (1993). Defendant argues that we cannot reach the state's emergency aid exception argument because she was unlawfully seized at the bus stop and therefore never properly subject to the mental commitment statute. She argues that implicit in the trial court's ruling was a finding that the seizure at the bus stop was unlawful. We reject defendant's characterization of the record. The trial court had no occasion to make such a finding because defendant did not challenge the lawfulness of her seizure in the trial court. Instead, defendant acknowledged the legality of the civil hold, but argued that, pursuant to *Okeke*, evidence obtained in a search of her possessions was not admissible. Accordingly, the state had no reason to make a record establishing the legality of defendant's restraint. We therefore decline to consider defendant's argument on the lawfulness of her seizure. *State v. Martin*, 135 Or App 119, 897 P2d 1187 (1995) (court declined to address arguments made by state for the first time on appeal).

---

"[w]hen a physician * * * believes a person who is brought to a hospital or nonhospital facility * * * is dangerous to self or to any other person and is in need of emergency care or treatment for mental illness, the physician may[,] * * * [a]fter consulting with a physician or mental health professional, * * * detain the person and cause the person to be admitted or, if the person is already admitted, cause the person to be retained in a hospital where the physician has admitting privileges or is on staff."

■ The trial court, relying on *Okeke*, reasoned that, because defendant was being held involuntarily under the authority of the mental commitment statute, any evidence seized by hospital personnel is inadmissible in a criminal prosecution. However, in *State v. Lippert*, 317 Or 397, 856 P2d 634 (1993), the Supreme Court held that "*Okeke* * * * never was intended to stand for so broad a proposition." 317 Or at 404.

In *Lippert*, a police officer took the defendant into civil custody for detoxification after the officer found him intoxicated and belligerent at the Burns Elks Club. Because no treatment facility was available in the county, the defendant was taken to the county jail, where a routine inventory of his belongings was taken. During that inventory, a paper-fold containing a substance later identified as cocaine was found. The defendant was indicted for possession of a controlled substance. The trial court granted the defendant's motion to suppress the paperfold and its contents. On appeal, the defendant relied on *Okeke*, claiming that, "[b]ecause [defendant] was taken into custody for detoxification, evidence obtained from him cannot be used in a prosecution against him." 317 Or at 404 (brackets in original). Reversing the trial court, the Supreme Court rejected that reading of *Okeke*, pointing out that, in *Okeke*, "[t]he evidence * * * was suppressed not simply because the search that uncovered the evidence occurred during a civil detoxification hold, but because the search exceeded the scope required by the peculiar circumstances there involved." 317 Or at 404. In so holding, the Supreme Court made clear that established exceptions to the warrant requirement may be utilized when a defendant is being held subject to civil authority.

■ Here, the state argues that the search of defendant's fanny pack was lawful under the emergency aid exception to the warrant requirement. The emergency aid exception established in *Follett* requires that:

"(1) The police [have] reasonable grounds to believe that there is an emergency and an immediate need for their assistance for the protection of life.

"(2) The emergency [is] a true emergency—the officer's good faith belief alone is insufficient.

"(3)   The search [is not] primarily motivated by an intent to arrest or to seize evidence.

"(4)   The officer [reasonably suspects] that the area or place to be searched is associated with the emergency and that, by making a warrantless entry, the officer will discover something that will alleviate the emergency." 115 Or App at 680 (footnote omitted).

Here, defendant's statements that she had taken 100 Ativan tablets gave Bjur reasonable grounds to believe that an emergency existed that required her assistance for the protection of life. The claimed overdose constitutes a true emergency, and Bjur's search of the fanny pack was motivated solely by her attempt to obtain information for treatment purposes, not to arrest or seize evidence. Finally, based on the statements defendant made about the location of the bottle, Bjur reasonably suspected that searching the fanny pack would lead her to discover something that would alleviate the emergency.

Accordingly, we hold that the gun seized by Bjur in the course of searching defendant's fanny pack was lawfully obtained under the emergency aid exception established in *Follett*. The trial court erred in ordering the evidence suppressed.

Reversed and remanded.