Argued and submitted July 23, reversed and remanded November 19, 1997

# STATE OF OREGON,
*Appellant,*

*v.*

# ALBERT WILLIAM MARTOFEL, JR.,
*Respondent.*

## (C 95-10-38021; CA A93675)

948 P2d 1253

Ann Kelley, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Sally L. Avera, Public Defender, argued the cause for respondent. With her on the brief was James N. Varner, Deputy Public Defender.

Before De Muniz, Presiding Judge, and Haselton, Judge, and Richardson, Senior Judge.

DE MUNIZ, P. J.

Haselton, J., concurring.

## DE MUNIZ, P. J.

Defendant was indicted for possession and manufacture of marijuana, a controlled substance. The state appeals a pretrial order suppressing evidence. We reverse.

The facts are not in dispute. At least eight patrol cars responded to a dispatcher's report that a 9-1-1 phone call had been received about a "man with a gun" in a residential neighborhood in southeast Portland. The police established a perimeter around the area and went to different locations to try to determine the person's location and purpose. While looking for the armed individual, an officer entered defendant's backyard where the officer saw growing marijuana plants. That discovery led to conversations with defendant's wife that, in turn, led to the seizure of the plants and the issuance of a warrant for a search of defendant's house where more marijuana plants were found. The man with the gun turned out to be a neighbor waiting for a ride to go hunting. He had actually left the area before the police arrived, although the trial court found, and the evidence supports, that the officers did not know that before discovery of the plants.

The trial court granted defendant's motion to suppress. It held that, at the time the officer entered defendant's backyard, there had been no true emergency. Therefore, as the court understood *State v. Follett*, 115 Or App 672, 840 P2d 1298 (1992), *rev den* 317 Or 163 (1993), the search could not be "saved by the emergency doctrine."

In *Follett* we held that the emergency aid doctrine provides an exception to the warrant requirement of Article I, section 9, when these conditions are met:

"(1) The police must have reasonable grounds to believe that there is an emergency and an immediate need for their assistance for the protection of life.

"(2) The emergency must be a true emergency—the officer's good faith belief alone is insufficient.

"(3) The search must not be primarily motivated by an intent to arrest or to seize evidence.

"(4)  The officer must reasonably suspect that the area or place to be searched is associated with the emergency and that, by making a warrantless entry, the officer will discover something that will alleviate the emergency." *Id.* at 680 (footnote omitted).

The only issue before us here is the interpretation of the second prong of the *Follett* test. The state argues that the court erred in holding that the determination of a true emergency is made in hindsight. The state contends that the proper analysis of the second prong is that, in addition to the officer's subjective belief that an emergency existed, that belief must have been objectively reasonable at the time of the warrantless entry. Defendant contends that the court did not err, because the second prong is meaningless unless it is construed to require that an emergency did in fact exist.

Exigent circumstances excuse the usual requirement of a warrant, and those circumstances exist if a situation requires the police to act swiftly to forestall the imminent destruction of evidence, escape of a suspect, or injury to persons or property. *State v. Lynch,* 135 Or App 528, 532, 900 P2d 1042, *rev den* 322 Or 362 (1995). As the state notes, the emergency aid doctrine is a form of exigency. Thus, under the emergency aid doctrine, a "true emergency" exists if the circumstances present grounds for an officer to reasonably believe that immediate police action is required. The officer must necessarily make that assessment in the light of the circumstances as they were at the time the warrantless entry was made. *State v. Russell,* 118 Or App 652, 655, 848 P2d 657, *rev den* 317 Or 272 (1993). Although after-acquired knowledge might alter how the circumstances are viewed, that does not mean that the circumstances as earlier understood did not present a "true emergency." *See State v. Davis* 295 Or 227, 240, 666 P2d 802 (1983) (emergency dissipated when victim found safe); *State v. De Aubre,* 147 Or App 412, 417, 937 P2d 125 (1997) (claimed overdose constitutes true emergency).

In *State v. Jones,* 45 Or App 617, 620-21, 608 P2d 1220, *rev den* 289 Or 337 (1980), we recognized that the emergency aid doctrine is

"founded upon the actions of police officers which are considered reasonable under the circumstances that faced the officer at the time of entry. * * * The inquiry is whether the facts available to the officer would lead a prudent and reasonable officer to see a need for immediate action to protect life or property. *Wayne v. United States*, 318 F2d 205 (DC Cir 1963). When faced with what he reasonably and in good faith believes to be an emergency, an officer's action should not be reviewed with severe judicial scrutiny in light of a hindsight analysis of the evidence. Even if the officer's conclusion that an emergency situation existed is ultimately determined to be erroneous, his actions should be upheld if the circumstances, as they appeared at time of entry, would lead a prudent and reasonable officer to conclude immediate action was necessary."

*See State v. Agnes*, 118 Or App 675, 679, 848 P2d 1237 (1993) (The assessment of whether a true emergency existed must be made in the light of the circumstances as they were at the time that the warrantless entry was made.); *State v. Martin*, 124 Or App 459, 464, 863 P2d 1276 (1993) (same).

The Supreme Court acknowledged the temporal nature of a "true emergency" in the context of the emergency aid doctrine in *Davis*. There, at least nine police officers responded to a report of a fight at a motel. There was no fight, but a man told the officers that his girlfriend might be being raped in a room by a man he had seen with an automatic pistol in his waistband. 295 Or at 229. The police went to the room with guns drawn, knocked on the door, and a woman, who was neither disheveled nor frightened came out. *Id*. The defendant moved to suppress evidence obtained during the subsequent warrantless search of his motel room.

The trial court had accepted the state's position that the emergency aid doctrine authorized the police entry. *Id*. at 238. The Supreme Court noted that the doctrine was founded on the actions of a police officer that are considered reasonable under the circumstances that faced the officer at the time of entry. *Id* at 238-39. The court held:

"[T]he circumstances which originally led the police officers to the door of Defendant's motel room arguably fell within the scope of the emergency doctrine. Hearing from an excited man that his girlfriend was being held in a motel

room by a man armed with an automatic pistol in his waistband, the police officers rightfully went to Defendant's door to investigate. But, after knocking on Defendant's door and *prior* to the time of the police officers' entry, the woman in whose aid the use of the doctrine might be justified, opened the door and left the motel room. Thus, any 'emergency' existing prior to her exit dissipated at the point she walked out the door." 295 Or at 239-40 (emphasis in original; footnote omitted).

Although the emergency aid doctrine did not provide the exigency to authorize the search because the circumstances that had originally confronted the officers had "dissipated," it did not follow that that dissipation meant that the original circumstances could not constitute an emergency.

■       Here, if before the officer's entry into defendant's backyard the officer had learned that the "man with a gun" situation had been resolved, the emergency would have dissipated. However, the officer did not know that. Instead, at the time of the entry into defendant's backyard, the officer knew only that an armed man had been seen in a Portland neighborhood. The circumstances known to the officer presented a situation requiring swift police action—a "true emergency." The trial court erred in suppressing the evidence.

Reversed and remanded.

**HASELTON, J.,** concurring.

I agree with the majority that the officer's discovery of the marijuana plants fell within the emergency aid doctrine exception. However, I believe that the "true emergency" terminology employed in *State v. Follett*, 115 Or App 672, 840 P2d 1298 (1992), *rev den* 317 Or 163 (1993), and subsequent decisions is confusing and, ultimately, unnecessary. Accordingly, I would expressly disavow and discard that language.

The emergency aid doctrine is triggered when (1) law enforcement personnel become aware of circumstances that would lead a reasonably objective person to believe that an emergency exists; and (2) those circumstances do, in fact, exist. Thus, if an officer is reliably informed that there is a man with a rifle in an urban neighborhood and a

reasonable person would believe that those circumstances required immediate police action, the emergency aid doctrine is triggered if, in fact, there is an armed man. That is so, regardless of whether the armed man is actually a fleeing criminal, an undercover officer, or a duck hunter waiting for a ride. If, however, there is no armed man, or if the man is in an area where being armed would not reasonably be viewed as constituting an emergency—for example, Sweet Home on Opening Day—the doctrine would not apply.

The vice of the "true emergency" terminology flows from "true." Metaphysics aside, "true" is innately ambiguous. In this context, "true emergency" could mean either: (1) actually existing "circumstances present grounds for an officer to reasonably believe that immediate police action is required," 151 Or App at 252; or (2) the totality of actually existing circumstances, whether known or unknown to the officer, do, in fact, require immediate police action.

I agree with the majority that the former is the proper test. Nothing in *Follett* or in the authority antedating and underlying our holding there suggests otherwise. *See, e.g., State v. Bridewell*, 306 Or 231, 759 P2d 1054 (1988); *State v. Davis*, 295 Or 227, 666 P2d 802 (1983). *See also State v. Jones*, 45 Or App 617, 608 P2d 1220, *rev den* 289 Or 337 (1980). However, it is undeniable that the language of "truth"—implying reference to some objective, "omniscient" reality—is reasonably susceptible of the second reading. As the trial court here observed:

> "I can't find any meaning in the [second *Follett*] factor unless it is the hindsight, which is to say, if police officers have reasonable grounds to think this is what is going on, God bless them, go ahead and do whatever you need to do to look. But if it turns out that there was no emergency, then this doctrine applies and you can't use any evidence of other criminal activity that you found as a result of going where you went."

*Follett*'s "true emergency" terminology is merely a label for a substantive inquiry: Did the circumstances that gave rise to a reasonable belief that immediate police action was required actually exist? Continued reference to that

label only serves to confuse the analysis. We should jettison the label.