Argued and submitted November 3, 1999, affirmed June 21, petition for review
denied October 4, 2000 (331 Or 193)

# STATE OF OREGON,
*Respondent,*

*v.*

# DAVID EDWARD MCDONALD,
*Appellant.*

## (970433285; CA A99422)

7 P3d 617

Mary M. Reese, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Kaye E. McDonald, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

WOLLHEIM, J.

### WOLLHEIM, J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. The issue is whether evidence discovered during a warrantless search of defendant's residence, after defendant regained consciousness from an apparent heroin overdose and denied drug use, is admissible under the "emergency exception" to the warrant requirement. We affirm.

We recite the facts in some detail as they were developed at the hearing on the motion to suppress. Police and an emergency medical team responded to a 9-1-1 call regarding a drug overdose. Officer Welp testified[1] that, generally, before a medical team will enter a residence, police investigate the situation to ensure its stability and safety for the medical team. Welp explained that defendant's mother let Welp and his partner into the residence and stated that she had made the 9-1-1 call, that defendant had had a heroin addiction for many years, that defendant was unconscious when she made the 9-1-1 call but that he may have regained consciousness, and that defendant was upstairs. Welp testified that he and his partner went upstairs and located defendant, who was conscious, sitting on a landing at the top of the stairs.

Welp testified that, in his own experience, he knew that heroin addicts use a "hype kit" to prepare the heroin for use. That kit often consists of a spoon and lighter or matches with which one heats the heroin until it reaches liquid form. The liquid is eventually drawn into a syringe and then injected into the person's vein. Welp explained that he noticed a swollen mark on defendant's arm indicating a recent injection and that a needle and several burned matches, but no spoon, were lying on top of a desk located on the same landing as defendant. Welp stated that he asked defendant questions about whether defendant was having a problem, if he had taken drugs, and how defendant was feeling. Defendant, according to Welp, adamantly denied any

---

[1] Welp was the only witness to testify at the hearing on the motion to suppress. The trial court found Welp credible. Accordingly, the facts are almost entirely derived from Welp's testimony.

drug use and claimed to be a diabetic but was "uncooperative" and appeared "hazy."

After that initial conversation, Welp concluded that it was safe for the paramedics and called them into the residence. Welp stated that both he and the paramedics tried to explain to defendant that they were there to help him and that defendant needed to explain the nature of his drug use. Defendant refused any help and denied drug use but could not answer in a knowledgeable manner the medical team's questions about his claimed diabetes. Welp explained that, while the medical team continued to talk with defendant, Welp began looking around to see exactly what kind of drug or combination of drugs defendant had taken. Welp explained:

> "It's important to know what combination of drugs he had taken because he had already been passed out and I've been to many drug overdose calls where people die. So it's important to determine what kind of drugs he had taken or if there was a combination of drugs."

Welp testified that he did not believe that it was a crime to be under the influence of a controlled substance in one's own home and that he was not concerned about probable cause to arrest defendant. Welp explained that his search was motivated only by wanting to know what kind of drugs or combination of drugs defendant had taken. Without obtaining a search warrant or defendant's consent, Welp searched defendant's room, which was 10 to 12 feet away from defendant, and located a spoon that had been used for drugs under a corner of defendant's mattress. Laboratory tests later indicated that heroin residue remained on the spoon.

After locating the spoon, Welp returned to the landing. There, the medical team had advised defendant that he should go to a hospital to be examined, but defendant had refused. Welp explained that defendant had signed a release and that the medical team had stated that defendant was conscious and was okay to be left. At that point, Welp placed defendant under arrest as a "first stop for [defendant] to get into treatment."

■ At the motion to suppress, defendant argued that Welp's search of defendant's room and under his mattress was a warrantless search in violation of the Article I, section 9, of the Oregon Constitution. "Warrantless entries and searches of premises are *per se* unreasonable unless they fall within one of the few, carefully circumscribed exceptions to the warrant requirement." *State v. Miller*, 300 Or 203, 225, 709 P2d 225 (1985), *cert den* 475 US 1141 (1986). The state is required to demonstrate the validity of a search by indicating under which exception the search was conducted. *See* ORS 133.693(4). The "emergency aid doctrine" is one of these exceptions, and, for it to apply, "the state must make a strong showing that exceptional emergency circumstances truly existed." *Id.* at 229. The trial court concluded that the search fell under the emergency aid exception and denied defendant's motion to suppress.

Defendant assigns error to that ruling and makes three arguments, all pertaining to the emergency aid exception. In *State v. Follett*, 115 Or App 672, 680, 840 P2d 1298 (1992), *rev den* 317 Or 163 (1993), we explained that

> "the Emergency Aid Doctrine provides an exception to the warrant requirement of Article I, section 9, when these conditions are met:
>
> "(1) The police must have reasonable grounds to believe that there is an emergency and an immediate need for their assistance for the protection of life.
>
> "(2) The emergency must be a true emergency—the officer's good faith belief alone is insufficient.
>
> "(3) The search must not be primarily motivated by an intent to arrest or to seize evidence.
>
> "(4) The officer must reasonably suspect that the area or place to be searched is associated with the emergency and that, by making a warrantless entry, the officer will discover something that will alleviate the emergency." (Footnote omitted.)

On appeal, defendant argues that Welp was not presented with a "true emergency" at the time of the search because the emergency dissipated when Welp discovered defendant conscious and denying drug use. *See State v.*

*Davis*, 295 Or 227, 239-40, 666 P2d 802 (1983) (once valid emergency dissipates, state may not invoke the emergency aid exception); *cf. State v. Martofel*, 151 Or App 249, 254-55, 948 P2d 1253 (1997), *rev den* 328 Or 82 (1998) (Haselton, J., concurring) (emergency need not, in fact, require immediate police action, but existing circumstances must reasonably indicate that immediate police action is required). Defendant also argues that the search was not for something that would have alleviated the emergency and that the emergency aid exception, itself, is unconstitutional.[2]

The state raises a preliminary challenge to our ability to review defendant's assignment of error. The state asserts that none of defendant's three arguments was preserved in the trial court. *See* ORAP 5.45 (only assignments of error preserved below may be considered on appeal). We agree that the constitutional argument is not preserved but conclude that defendant's two remaining arguments, pertaining to the application of the emergency aid exception, are preserved.

■ The state agrees that defendant did argue that the emergency aid exception was inapplicable in his case but only because Welp was looking for evidence with which he could arrest defendant. The state contends that defendant never asserted that the "true emergency" had dissipated before the search and that the search was not for something that would have alleviated the emergency. The state is incorrect. Defendant's contentions below did indeed focus primarily on the officer's *motivation* for the search, an argument not made on appeal, but defendant also argued that the proof of Welp's allegedly illicit motivation lay in the fact that the search for heroin would not have assisted in the heroin overdose emergency. Accordingly, the record plainly reveals that defendant preserved the argument that the search was not for something that would have alleviated the emergency.

■ In addition, defendant argued below that Welp's search was not motivated to help in the emergency because the emergency had already ended. In particular, defendant

---

[2] Defendant does not, on appeal, argue that Welp's search was primarily motivated by an intent to arrest defendant or that Welp could not reasonably suspect that defendant's room or bed was associated with the emergency on the landing.

argued that the emergency had in essence dissipated before the search because the medical team had stated that defendant was okay to be left *before* the search. On appeal, defendant admits that that statement was made *after* the search but asserts that the correct reason for concluding that the emergency had dissipated *before* the search was that defendant was conscious and refusing help. Defendant is therefore advancing the same issue on appeal but asserting an alternative argument to support his theory. *See Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or 487, 501, 982 P2d 1117 (1999) (generally on appeal, case should be heard on the same theory on which it was presented in the court below).

The Supreme Court has repeatedly recognized that appellate courts may consider alternative arguments made for the first time on appeal if doing so does not violate the purposes of fairness and efficiency underlying the preservation doctrine. *See id.* at 499-501; *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) (holding that specific alternative argument could be raised for first time on appeal); *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (raising an issue at trial is ordinarily essential; raising the source for that position is less essential, and raising a particular argument is the least essential); *see also Northwest Natural Gas Co.*, 328 Or at 500 (the purpose of the preservation doctrine is to help ensure that the positions of the parties are presented clearly to the initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument). Making a specific alternative argument on appeal on the issue of the dissipation of the emergency results in no fundamental unfairness to the state. The state does not contend that defendant's argument has unfairly surprised it, misled it, or denied it an opportunity to meet an argument, and we can see no purpose served in prohibiting defendant from developing an argument from facts fairly developed in the record on an issue that was before the trial court.

We therefore address defendant's two arguments that the "true emergency" had dissipated before the search and that the search was not for something that would have alleviated the emergency. We reject, without discussion, defendant's argument that Welp's search for an amount or combination of drugs was not for something that would have

alleviated the emergency caused by defendant's overdose of drugs. *See State v. De Aubre*, 147 Or App 412, 417, 937 P2d 125 (1997) (search of the defendant's fanny pack to discover the dosage of drug taken in overdose was designed to obtain information for medical treatment purposes).

We next consider whether a "true emergency" existed at the time of the search or whether the emergency had dissipated. We have explained that "[t]he assessment of whether a true emergency existed must be made in light of the circumstances as they were at the time that the warrantless entry was made." *State v. Russell*, 118 Or App 652, 655, 848 P2d 657, *rev den* 317 Or 272 (1993). The inquiry is necessarily undertaken separately for each case because we consider whether the "circumstances present grounds for an officer to reasonably believe that immediate police action is required." *Martofel*, 151 Or App at 252. Although the officer's assistance must be *needed* for the protection of life, our inquiry focuses on the reasonableness of the *officer's* belief that an emergency existed.

We are bound by the historical facts, as found by the trial court, if there is evidence in the record to support them. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). If findings are not made on all such issues, and there is evidence from which such facts could be decided in more than one way, we will presume that the facts were decided in a manner consistent with the trial court's order. *Id.* The trial court implicitly found that Welp subjectively believed that his immediate assistance was required in helping to determine the amount and combination of drugs taken by defendant. That finding is supported by the record. *See State v. Toevs*, 327 Or 525, 535, 964 P2d 1007 (1998) (subjective belief is a question of fact).

Whether or not the circumstances objectively presented reasonable grounds to believe that immediate action was required is within the competence of this court independently to determine. *See id.* at 535-36. We have held before that a drug overdose can constitute a true emergency, *see De Aubre*, 147 Or App at 417, and we conclude that here it was objectively reasonable for Welp to believe that his immediate assistance in determining the amount, variety, and combination of drugs taken by defendant was required to

avert a life threatening drug overdose. The officer had been informed by defendant's mother that defendant had recently been unconscious and was a heroin addict. The officer's observations of needle marks and a partial "hype kit" indicated a likely heroin overdose. In addition, although defendant was conscious, in the officer's experience, consciousness did not necessarily mean that the danger of the overdose had dissipated. *See State v. Goodman*, 328 Or 318, 328, 975 P2d 458 (1999) (officer's training and experience in connection with objective facts may be considered in determining whether probable cause exists). Importantly, the officer had also noticed that defendant was "hazy," indicating that defendant was still likely under the effects of the overdose, and the officer noted that defendant was unable to cogently describe any diabetic condition.

Finally, at the time of the search, it was not immediately obvious to the medical team that defendant did not need medical attention. Rather, despite defendant's refusals, the medical team still found it necessary to observe and question defendant to try to determine whether he needed medical attention. In sum, while defendant's consciousness and adamant denials of drug use were contraindications of the need for emergency life-saving assistance, from the totality of the circumstances Welp reasonably could have believed, and did believe, that defendant was the victim of a continuing and life threatening drug overdose at the time Welp discovered the spoon.

Accordingly, we hold that the heroin seized by Welp in the course of searching defendant's room was lawfully obtained under the emergency aid exception to the warrant requirement established in *Follett*. The trial court did not err in denying defendant's motion to suppress.

Affirmed.